[No. 6143-4-III.   Division Three.   June 21, 1984.]

*In the Matter of the Personal Restraint of*
EDWARD ROBERT WADE, *Petitioner.*

*John W. Wolfe,* for petitioner.

*Arthur R. Eggers, Prosecuting Attorney,* and *Carl L. Johnson, Deputy,* for respondent.

MUNSON, C.J.—Edward Robert Wade seeks relief from personal restraint imposed by Walla Walla County convictions of aiding and abetting second degree murder and taking a hostage.

Mr. Wade was sentenced to life imprisonment on January 9, 1974, upon pleading guilty to murder, and on December 1, 1975, he was sentenced to 10 years upon pleading guilty to holding a person hostage. Mr. Wade contends he was not adequately advised of his rights prior to the entry of the pleas and there was an insufficient factual basis to support them.

### THE MURDER PLEA

Mr. Wade's first degree murder trial began on January 7, 1974, with the selection of a jury and testimony from a

Walla Walla police detective who investigated the murder of an inmate at the penitentiary. He testified about the large number of stab wounds suffered by the victim, a fellow inmate at the Walla Walla Penitentiary, and about a search of Mr. Wade's cell and clothing. Bloodstained clothing was taken from Mr. Wade and Michael Ede, a homemade knife was found in a cell shared by them. Mr. Ede also was charged with the slaying.

On January 8, correctional officers testified about their investigations of the murder. Also testifying was an FBI lab specialist who had tested the various articles of clothing for blood. The detective, the correctional officers and the agent were all cross–examined that day.

On January 9, the third day of trial, Mr. Wade was identified by an eyewitness as the "anchorman"—the person who held the victim down—while Mr. Ede stabbed him to death. Following cross examination of this eyewitness, the court took its morning recess. At that time, in exchange for a reduction of the charge to aiding and abetting second degree murder, Mr. Wade pleaded guilty. He signed a statement of defendant on a plea of guilty, acknowledging he had read and understood it. Furthermore, the court specifically asked if he understood he was waiving his rights to remain silent, to a jury trial and "to be confronted by [his] accusers." The following colloquy occurred:

THE COURT: Mr. Wade, in this statement that was filled out, you said you wish to plead guilty to aiding and abetting murder in the second degree. At the time that you entered the room did you know that Mr. Parker was likely to be killed? Was that the purpose of going in there?

THE DEFENDANT: Yes, Sir.

In a letter attached to the supplemental response of the prosecutor to this petition, one of Mr. Wade's attorneys said Mr. Wade agreed to plead to a reduced charge because during the description of the murder and its very graphic and gory details, counsel observed Mr. Wade was turning to the jury and smiling. His lawyers believed it would have a

detrimental effect on the jury and, counsel recalls, Mr. Wade believed they were correct and entered the plea.

We note at the outset with respect to both pleas, Mr. Wade's counsel failed to fully apprise this court of the circumstances surrounding the pleas. He did not mention the murder plea was taken after 3 days of trial, the admission of more than 30 exhibits and vigorous cross examination by Mr. Wade's trial counsel. With respect to the hostage plea, counsel only provided partial quotations from the record, out of the context in which they were made. Such a lack of candor is not appreciated.

As to the issues raised, Mr. Wade has failed to demonstrate actual prejudice, *see In re Hews*, 99 Wn.2d 80, 660 P.2d 263 (1983). It is apparent Mr. Wade was informed of the nature of the charges against him in view of the interrupted jury trial and his statement upon plea of guilty, wherein he states he was pleading guilty to the charge in the amended information, a copy of which he had received. *See In re Keene*, 95 Wn.2d 203, 622 P.2d 360 (1980). Also, the prosecutor orally advised him of the contents of the amended information. Furthermore, it is unlikely Mr. Wade was not aware of his right to cross–examine witnesses because he had already been through 3 days of trial, and counsel had exercised his right. Finally, the record shows Mr. Wade was advised of his right against self–incrimination and that a guilty plea waived that right. He was adequately advised of his constitutional rights.

Relying solely on the colloquy between the court and himself, Mr. Wade contends there was an insufficient factual basis to support his plea. Given (1) the prosecutor's recitation of the elements of the offense contained in the amended information;[1] (2) the facts as testified to by the State's witnesses for 3 days (which were heard by the court and the defendant); and (3) the colloquy, a commonsense

---

[1]The prosecutor read that Mr. Wade willfully and knowingly aided, abetted, encouraged, assisted, advised and counseled someone who stabbed the victim to death.

reading of the record satisfies the requirements of *In re Hews, supra.* Furthermore, since Mr. Wade's plea predates *Wood v. Morris,* 87 Wn.2d 501, 554 P.2d 1032 (1976), we may look outside the record of the plea hearing to ascertain if the plea was knowing and voluntary. Mr. Wade understood the nature of the offense and admitted sufficient facts to find him guilty beyond a reasonable doubt.

Even if this plea had been entered after *Wood v. Morris, supra,* we would not exalt form over substance. Ignoring 3 days of trial testimony and the exercise of a defendant's right to jury trial, which he interrupts to enter a plea to a reduced charge, to upset an otherwise valid plea for some overly technical, hypercritical and meaningless flaw in the plea–taking record asks too much of this court.

### THE HOSTAGE PLEA

With respect to the hostage taking plea, the statement of the defendant on plea of guilty indicates Mr. Wade was advised of his rights to counsel, to a jury trial, to hear and question witnesses against him and of the necessity of proving the State's case beyond a reasonable doubt. In addition, the report of proceedings on entry of the plea establishes the court also orally advised Mr. Wade of his rights:

THE COURT: And when you enter a plea of guilty, you are admitting that you did what you are charged with and this becomes the proof of the fact that you did. It is not necessary for the prosecution to produce any witnesses for the Court to make a determination as to whether you did or didn't do the crime, and you have waived your right to silence and a jury trial. You understand this?

THE DEFENDANT: Yes, sir.

For a factual basis, the court asked Mr. Wade what he did to commit the crime. Mr. Wade replied he was trying to get some drugs out of the hospital (apparently the prison hospital). The court asked what he did while he was trying to accomplish that, and Mr. Wade replied, "I went in the side door and told them I wanted some drugs, and they told

me I couldn't have none, so I left." The defendant added: "The way it happened, we went into the side hospital and we were loaded on drugs, and we had knives, and we said we wanted some drugs, and the person said, 'I don't have the keys. I can't give them to you.' And I said, 'Okay,' so we left. That's what happened." When counsel asked whether a hostage had been taken, the defendant said, "I told the three to get against the wall and stand there. I guess you call it holding a hostage, Your Honor."

Furthermore, the court inquired of counsel whether the matter had been discussed with his client and whether counsel was convinced that what the client had done constituted the crime of holding a hostage. Counsel replied affirmatively, and the court asked, "On the basis of him with the knife having held these people against the wall for a period of time?" Counsel replied affirmatively.

The record demonstrates Mr. Wade knowingly and intelligently waived his trial rights by pleading guilty, and there is a sufficient factual basis to support the plea. Although the better practice is for the prosecutor to detail the factual basis, *see In re Teems,* 28 Wn. App. 631, 626 P.2d 13 (1981), Mr. Wade has not shown actual prejudice requiring relief from personal restraint. *See In re Hews, supra.*

The petition is dismissed.

GREEN and THOMPSON, JJ., concur.

Reconsideration denied August 1, 1984.