# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59845-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JELANI AKAELI DEWAYNE PERRY, | |
| Appellant. | |

PRICE, J. — Using somebody else's identification, Jelani A. D. Perry attempted to buy cars at two dealerships, one in Pierce County and one in King County. Perry was subsequently charged with several crimes in separate cases brought in the two counties. After a global resolution that involved consolidating all charges into the Pierce County action, Perry pleaded guilty to two counts of attempted first degree identity theft, one count of attempted theft of a motor vehicle, and one count of forgery.

On appeal, Perry argues that the record contains an insufficient factual basis to determine whether his plea, especially to the King County charges that were included in the Pierce County resolution, was voluntary. We affirm.

## FACT

On March 25 and 26, 2023, Perry used another person's personal and financial information in an attempt to purchase vehicles in Pierce County and King County. The Pierce County Prosecuting Attorney's Office charged Perry with first degree identity theft and theft of a motor

vehicle for the March 25 offenses. The King County Prosecuting Attorney's Office charged Perry with attempted theft of a motor vehicle, attempted first degree identity theft, and forgery, for the March 26 offenses.

On April 16, 2024, prior to trial for the Pierce County matter, the State moved under ER 404(b) for the admission of evidence related to the King County charges. Included in this evidence were documents describing the facts from King County, including the King County prosecutor's case summary and the probable cause statement from law enforcement describing its investigation.

Days later, all parties reached a global resolution to the charges in both Pierce and King counties. In exchange for dismissal of the King County charges, Perry agreed to plead guilty in Pierce County to an amended information that included the charges from both counties. The amended information included two counts of attempted first degree identity theft, one count of attempted theft of a motor vehicle, and one count of forgery. As part of the plea agreement, the State agreed to recommend a low-end sentence of 47.25 months in custody, which would run all of the counts concurrently.

Perry's plea hearing took place on April 24. At the hearing, the State filed its "Prosecutor's Statement Regarding the Amended Information," which specifically referenced incorporating the charges from the King County matter:

> Between March 25 and March 26, 2024, the defendant used false identities and false documents to acquire or attempt to acquire vehicles. . . . The Information is amended in part to incorporate the charges reflected in the King County cause number as part of this global resolution . . . .

Clerk's Papers (CP) at 165. (As noted above, the King County probable cause statement and police reports had been recently filed in the Pierce County cause number as part of the State's 404(b) submission.)

2

No. 59845-1-II

The State also provided the superior court with the amended information, the prosecutor's statement regarding amended information, the defendant's plea statement, and Perry's stipulation to criminal history.[1] The State explained that the amended information encompassed charges in King and Pierce counties and that the King County case would be dismissed after the hearing.

Defense counsel confirmed that Perry was pleading guilty in exchange for this global resolution. Counsel explained,

> Yes, so there's a few things going on. We are adding Counts III and IV, which are counts that have—that have been filed in King County. They are resolving them here in return for a global resolution. That's laid out in the Prosecutor's Statement regarding, like, kind of the procedural history of how we're doing this.
>
> Then the other thing is we are now filing, Count I has been amended to an Attempted Identity Theft instead of a completed one.
>
> And so Mr. Perry, in return for all of those considerations, is agreeing to plead guilty, and that's laid out in the Statement of Defendant on Plea of Guilty.
>
> He's aware of what rights he has, what rights he gives up by entering a plea of guilty, what the State is going to recommend in return for his plea.
>
> I believe he's entering this plea knowingly, intelligently and voluntarily and I'm going to ask the Court to accept it.

VRP at 38-39.

The superior court began its colloquy with Perry by confirming that Perry had received a copy of the amended information. Perry also said that he had heard and understood everything counsel and the superior court had discussed at the hearing up to that point. Perry said, "No," when asked whether he disagreed with any of his attorney's statements. Verbatim Rep. of Proc.

---

[1] Perry's criminal history spanned over a decade and gave him an offender score over 9. Among his past convictions were multiple counts of forgery (and attempted forgery), attempted identity theft, unlawful possession of a payment instrument, and theft of a motor vehicle (and attempted theft of a motor vehicle).

3

(VRP) at 40. Perry confirmed that his attorney had read him the plea statement and that he had also read it himself. The superior court asked Perry whether he had any questions about the amended information or any of the elements of the crimes for which he was charged. Perry answered, "No." VRP at 41.

The superior court confirmed that Perry understood the constitutional rights that he would be waiving by pleading guilty, the maximum penalties for the crimes charged, the applicable sentencing range and community custody term, the prosecutor's sentencing recommendation, and that the State's recommendation for Perry's sentence did not have to be followed.

The superior court then drew Perry's attention to paragraph 11 of the statement of defendant on plea of guilty, which contained a handwritten statement of how Perry's actions constituted the crimes charged. The statement read,

> On 3/25/23 in Pierce County, State of Washington I took a substantial step toward knowingly using a means of identification or the financial information of another person with the intent to commit any crime and obtained goods of a value in excess of $1,500. I also took a substantial step toward the theft of a motor vehicle.
>
> On 3/26/23 in the State of Washington I took a substantial step toward knowingly using a means of identification or the financial information of another person with the intent to commit any crime and obtained goods of a value in excess of $1,500.
>
> I also did, with the intent to injure or defraud, alter a written instrument.

CP at 177. The superior court then asked the following questions:

> The Court: Paragraph 11 is a very, very lengthy handwritten statement, sets forth the facts allowing me to accept your guilty plea today. Did you read this very, very lengthy statement?
> [Perry]: Yes.
> The Court: Do you agree with it?
> [Perry]: Yes.

4

The Court: On Page 12 of this form is (unintelligible) signature. Is that your signature?

[Perry]: Yes, sir.

The Court: Did you sign this form in front of your attorney . . . ?

[Perry]: Yes, sir.

VRP 43-44.

The superior court then asked Perry how he pleaded to each of the four counts as they appeared in the amended information. For each charge, Perry answered, "Guilty." VRP at 44-45.

Following the colloquy with Perry, the superior court made the following conclusions:

Okay. I have talked to Mr. Perry about the Statement of Defendant on Plea of Guilty and he understands what he's charged with now, he understands the Amended Information. He understands the consequences of pleading guilty. *There is a factual basis.* I'll accept his guilty pleas to each count. He's answered all of my questions, and that leads me to believe *he is making knowing, intelligent and voluntary pleas of guilty* to each count. I accept his guilty pleas.

VRP at 45-46 (emphasis added).

Neither Perry nor his counsel made any objections to the superior court's conclusions or to the voluntariness or factual sufficiency of the plea. Nor did Perry file a motion to withdraw his guilty plea under CrR 4.2(f).

The superior court followed the agreed, low-end recommendation and sentenced Perry to 47.25 months' confinement and 12 months' community custody.

Perry appeals.

ANALYSIS

Perry argues that the superior court erred by accepting his plea without being provided a sufficient factual basis for the King County charges and that it is "impossible" to tell if his plea was voluntarily made without this factual basis in the record.  Br. of Appellant at 10.  The State responds that, among other things, Perry has not shown that he actually lacked an understanding of his plea.  We hold that, under a totality of circumstances, Perry's plea was knowingly, intelligently, and voluntarily made.

Due process requires that a guilty plea must be knowing, intelligent, and voluntary.  *State v. Olsen*, 3 Wn.3d 689, 698, 555 P.3d 868 (2024).  A guilty plea is not truly voluntary unless the defendant knows the elements of the offense and understands how his conduct satisfies those elements.  *State v. R.L.D.*, 132 Wn. App. 699, 705, 133 P.3d 505 (2006); *see State v. Snider*, 199 Wn.2d 435, 444, 508 P.3d 1014 (2022) (A defendant's guilty plea does not qualify as constitutionally valid unless the defendant has notice of the charges against him, an awareness of the basic elements of those charges, and an understanding of which actions and state of mind must exist to meet those elements.).

" 'Whether a plea is knowingly, intelligently, and voluntarily made is determined from a totality of the circumstances.' "  *Snider*, 199 Wn.2d at 444 (quoting *State v. Branch*, 129 Wn.2d 635, 642, 919 P.2d 1228 (1996)).  The constitutional mandate requiring that a person be properly informed of the elements of the crime charged "does not require the [superior] court to exhaustively detail every fact relevant under each element of that crime."  *Id.* at 448.  "When a defendant pleads guilty after receiving a charging document that accurately describes the elements of the offense charged, their plea is presumed to be knowing, voluntary, and intelligent."  *Id.* at

445. "When the relevant documents include accurate advisements, we presume the plea is valid, subject to a showing that the defendant was affirmatively misled. *Id.* at 449; *see State v. Horntvedt*, 29 Wn. App. 2d 589, 599, 539 P.3d 869 (2023) (A plea may be deemed involuntary if the defendant faces misinformation, threats, or mental coercion.). Additionally, when a defendant signs a written guilty plea, in compliance with CrR 4.2(g), that written plea provides a prima facie showing of the plea's constitutionality, and when that written plea is supported by a superior court's oral inquiry on the record, " 'the presumption of voluntariness is well nigh irrefutable.' " *State v. Davis*, 125 Wn. App. 59, 68, 104 P.3d 11 (2004) (quoting *State v. Perez*, 33 Wn. App. 258, 261-62, 654 P.2d 708 (1982)).

We review the constitutional sufficiency of a defendant's guilty plea de novo. *Snider*, 199 Wn.2d at 444.

Here, the superior court engaged in a colloquy to ensure Perry had received and understood the charging documents that listed the charges against him and the plea agreement that he signed. And nothing in the record or in Perry's appeal indicates that he was affirmatively misled or coerced by defense counsel, the State, or the superior court. Moreover, the record included documents from King County, including law enforcement reports and probable cause declarations, demonstrating how Perry's actions violated the relevant statutes giving rise to each charge, as well as a summary of Perry's criminal history, indicating that he had been charged with similar offenses several times in the past.

Further, practically speaking, there was nothing "esoteric" about these charges. *In re Pers. Restraint of Hilyard*, 39 Wn. App. 723, 727, 695 P.2d 596 (1985) (finding a sufficient basis for a plea with minimal factual information in the record when the charge was straightforward and not

7

"esoteric"). Not only does Perry's criminal history show extensive experience with the criminal justice system, it also shows experience with the very charges at issue here—Perry had been previously convicted of each of these offenses at least once before.[2]

In short, because the superior court confirmed Perry received and understood the charging documents that accurately described the elements for each count against him, and Perry has shown no misinformation, the totality of the circumstances shows Perry's plea was knowing, voluntary, and intelligent.[3]

## CONCLUSION

We affirm.

---

[2] Through his plea, Perry took advantage of a global settlement that combined, and ran concurrently, his charges from two counties with a low-end recommendation. And with the assistance of counsel, he engaged in a lengthy colloquy with the superior court before pleading guilty—and, throughout, neither he nor his counsel lodged any objection to the process or the substance of the plea.

[3] To the extent Perry separately argues that the superior court violated CrR 4.2 by failing to develop a factual record required under the rule, we disagree that such alleged error is reviewable. Unlike the voluntariness of a plea, which can be reviewed for the first time on appeal, the superior court's procedural obligations under CrR 4.2 generally do not rise to the level of a constitutional violation. *Branch*, 129 Wn.2d 635 at 642 ("the procedural requirements of CrR 4.2 are not constitutionally mandated"); *see also Hilyard,* 39 Wn. App. at 727 ("The duty imposed by court rule that the judge must be satisfied of the plea's factual basis should not be confused with the constitutional requirement that the accused have an understanding of the nature of the charge."). By failing to object below, Perry failed to preserve this alleged error.

No. 59845-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

CHE, J.

CRUSER, J.